IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,      )
                                )

        v.                    )      CRIMINAL NO. 4:23cr36-03 (JKW)
                                )

YUNIER RENTERIA RENTERIA,      )
       Defendant.             )

**POSITION ON SENTENCING
AND MOTION FOR DOWNWARD VARIANCE**

COMES NOW the defendant YUNIER RENTERIA RENTERIA (hereinafter "Renteria

Renteria"), by and through counsel, and pursuant to Section 6A1.2 of the *Sentencing Guidelines*

*and Policy Statements* of the United States Sentencing Guidelines ("U.S.S.G.") and this Court's

Sentencing Procedures Order, avers he has reviewed the Presentence Investigation Report ("PSR")

prepared in this case and raises no objections to the calculation of the advisory recommended

sentence. The PSR calculates the guidelines at Level 21 and a Criminal History Category I (zero

points) which yields an advisory sentence of between 37-46 months' imprisonment (PSR ¶¶ 3, 29,

32, 66-67).

Renteria Renteria respectfully submits that a variance sentence of 24 months would be

sufficient but not greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553

(a).  He seeks a such a variance sentence for three specific reasons which, although considered by

the U.S.S.G., deserve closer scrutiny. First, he was a minimal participant, the lowest of the low, in

this offense (PSR ¶ 18). Secondly, Renteria Renteria's participation in this one-time offense was

of limited duration, a single criminal transaction motivated by the dire need to support his family

This conduct marked a deviation from an otherwise law-abiding life (PSR ¶¶ 30-35). Thirdly, his

displacement status and physical abuse contributed to substance abuse and to embark in this illegal

1

activity (PSR ¶¶ 38-41, 54-57).  These three factors suggest that a variance is appropriate and warranted. Additionally, the other two co-defendants received variant sentences of 30 months (PSR ¶¶ 5-6).

## INTRODUCTION AND PROCEDURAL HISTORY

Renteria Renteria is almost 28 years old, a first-time offender, and a citizen of Colombia. He was arrested in the high seas and paroled into the United States to be prosecuted and will be deported following completion of his sentence.  Renteria Renteria stands to be sentenced on May 8, 2024, for his conviction, upon his guilty plea, to Possession with Intent to Distribute More than Five Kilograms of Cocaine (a Schedule II controlled substance) on Board a Vessel of the United States, in violation of Title 46, United States Code, Sections 70503.

Renteria Renteria and two (2) other mariner co-defendants were arrested on this drug charge by the United States Coast Guard on March 17, 2023 (PSR Page 1, ¶¶ 1, 7.2). The case was brought to this Court for prosecution, and he has been in custody since that day. Renteria Renteria wished to plead guilty at the arraignment on May 8, 2023, before United States Magistrate Judge Douglas Miller because, as he stated, he is guilty. He was not permitted to do so as it was not the proper procedural stage to do so. Later, his psychological problems manifested themselves.

After a motion for a Psychological Evaluation was granted (ECF No. ¶¶ 45-46) and a Report on the valuation received, the Court eventually determined that Renteria Renteria was competent to stand trial and did not have a mental disorder (ECF No. 72). Renteria Renteria pleaded guilty on January 3, 2024 to the single count in the indictment (ECF No. 184; PSR ¶¶ 2-3). Sentencing is currently scheduled for May 20, 2024. Renteria Renteria will be the last of the codefendants to be sentenced. The Court imposed a sentence of 30 months imprisonment, $100.00 Special Assessment, and 2 years Supervised Release.  There is no restitution or forfeiture.

## PERSONAL BACKGROUND

Renteria Renteria is about to turn 28 years of age. He was born in Buenaventura, Colombia, a port city on the Pacific Ocean. Buenaventura has had a notorious history plagued by the Colombian armed conflict, drug trafficking, violence, and the presence of guerrillas and paramilitary groups and the most dangerous city on Colombia. [1] His parents were not married. He never knew his father and his mother is currently 53 years old. He has 7 siblings. (PSR ¶¶ 7, 42). Renteria Renteria was raised by his grandparents in a mountainous region. He was brought up in a humble community made up of farmers and peasants. (PSR ¶ 38). As is common in several areas of Colombia, armed groups – formerly identified with a political ideology like the guerrillas on the far left and the paramilitaries on the far right, occupied land in regions where they could grow coca plants, refine them, or had access to deep water to transport them. In so doing they displaced a sizeable amount of the area residents.[2] Renteria Renteria and his family were among the many who were displaced by these armed drug trafficking groups who now have dropped any semblance of political ideology to become purely and simply drug dealing criminal groups (PSR ¶ 38).

Renteria Renteria provides a real-life account of that sad reality of population displacement and internal strife of the most vulnerable population. He identifies several family members and friends who were killed by these violent groups (PSR ¶ 38.) Following his displacement, Renteria Renteria and his family were relocated to Buenaventura where they subsisted on humanitarian aid provided which was inadequate (PSR ¶ 39). His stepfather taught him how to fish and together they worked in that capacity. However, even fishermen were targets of armed robbers and they

---

1.      *"Colombia's new urban drugs war". 18 August 2007. Retrieved 19 April 2018 – via news.bbc.co.uk.*

2 Colombia has one of the largest internally displaced populations in the world with somewhere between 6 and 8 million people in 2022 according to the UNHCR Global Focus (United Nations Refugee Agency).

had to switch occupations (PSR ¶ 39). Next, Renteria Renteria was relocated to Cali, Colombia, where many Haitian immigrants reside (PSR ¶ 40). At age 15, while living in an abandoned house among the displaced, he was the victim of sexual abuse (PSR ¶ 41).

Renteria Renteria has four children. Daughters A.R.P. (age 5) and T.R.P. (age 1) and sons J. (age 4) and S. (age 2). All the children live with their respective mothers. Prior to his arrest, Renteria Renteria lived with his mother, wife, and two children. He was offered money to go with some unknown men to Ecuador and in his desperation to obtain funds to pay for medical procedures for his family, he accepted. Once he realized what he had gotten into – her was in open sea – and was unable to back out (PSR ¶ 18).

Renteria Renteria has submitted to a psychological evaluation. At times, he appeared confused and presented a possible delusional thinking. As a result, he was prescribed antipsychotic medications (PSR ¶¶ 47,48). After examination, the psychologists concluded that he did not suffer from a major mental disorder (PSR ¶ 49). Renteria Renteria has complained of various ailments (PSR ¶¶ 50, 51). However, he has been diagnosed with substance abuse disorder consisting of alcohol abuse, cocaine abuse, and marijuana usage (PSR ¶¶ 53-56). It appears that his drug usage has become problematic. His diagnosis is severe alcohol disorder (PSR ¶ 57).

Renteria Renteria does not have a lot of formal schooling. He reports learning how to read and write from his aunt. He also reports that teachers used to send him home because he could not learn anything. (PSR ¶¶ 58-60).

Renteria Renteria held several menial jobs to support his family, including cab/uber driver, barber, construction worker, and fisherman. (PSR ¶¶ 39, 61-63). None of them provided sufficient financial resources to support his family. Renteria Renteria has no assets and no ability to pay a fine or the cost of incarceration. (PSR ¶ 64, 65).

4

In his frustration and desperation to support his family, Renteria Renteria succumbed to temptation and agreed to get involved in this crime of running a large amount of marijuana for drug traffickers. It is clear to see that his participation in this offense is out of character for him. He deeply regrets his participation in this crime, expresses great remorse and sincere contrition (PSR ¶ 16).

## SENTENCING AUTHORITIES

Federal sentencing is guided by the overarching principle that a district court impose a sentence that is "sufficient, but not greater than necessary" to achieve the following goals: reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, protect the public, and provide necessary rehabilitation. 18 U.S.C. § 3553(a)(2); *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). In fashioning an appropriate sentence, the Court must also consider the nature of the offense and characteristics of the defendant, the kinds of sentences available, the sentencing guidelines, any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and any need to provide restitution. 18 U.S.C. § 3553(a) (1), (3)-(7).

Although a court should begin any sentencing by correctly calculating the guidelines range, the guidelines are but one of many factors that a court must consider under § 3553(a). *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). The sentencing guidelines are advisory, *United States v. Booker*, 543 U.S. 220, 246 (2005), and a sentencing court may not presume them to be reasonable. *United States v. Nelson*, 555 U.S. 350, 129 S. Ct. 890, 892 (2009) (*per curiam*); *see also United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007). Furthermore, the guidelines do not dictate what constitutes a reasonable sentence. *See United States v. Olhovsky*, 562 F.3d 530, 550 (3d Cir. 2009). A sentencing court may vary from the guidelines based on a categorical disagreement with a particular guideline that does not properly reflect the § 3553(a) factors, or it

may vary because given the individual characteristics of a particular case, the guidelines recommend an excessive sentence. *See Kimbrough*, 128 S. Ct. at 570, 576; *United States v. Tomko*, 562 F.3d 558, 571 (3d Cir. 2009) (en banc). The Court must consider all "kinds of sentences available" by statute §3553 (a)(3), even if the "kinds of sentences … established by the guidelines" recommend only prison. *Gall, 552 U.S.* at 59 and note 11.

There is no limitation on the information a court may consider in determining an appropriate sentence. 18 U.S.C. § 3553; United States Sentencing Guidelines Manual ("U.S.S.G") § 1B1.4 (2008). Matters such as age, education, mental or emotional condition, history of abuse, medical condition, employment history, lack of guidance as youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. "These are, however, matters that § 3553(a) authorizes the sentencing judge to consider." *Rita v. United States*, 551 U.S. 338, 365 (2007) (Stevens, J., concurring) (citations omitted); *accord United States v. Chase*, 560 F.3d 828, 830-31 (8th Cir. 2009). The Supreme Court observed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). A sentence that focuses only on the offense and not the individual characteristics of the defendants or the other § 3553(a) factors is unreasonable. *Olhovsky,* 562 F. 3d at 549. Thus, sentencing courts are charged with the duty to consider the specific characteristics of the defendants, as well as of the offense, in determining an appropriate sentence.

## FACTS AND GUIDELINE CALCULATION

The facts set forth in the Statement of Facts (ECF No. 75) and PSR (¶¶ 7.1-4, 8-12) are true and accurate.   Renteria Renteria admitted his criminal responsibility for his participation – as

one of the mariners on this boat – in this offense (PSR ¶¶ 16, 18). The advisory guideline calculation results in a level 19 and CHC I and a suggested sentence of 30 – 37 months' imprisonment. Renteria Renteria does not dispute that calculation. The government's evidence clearly shows that he is a minimal participant and not the owner or even an investor in the seized load of cocaine.

The Supreme Court stated in *United States v. Koon*, 518 U.S. 81, 94-96 (1996), that downward departures can be raised for several reasons. The Court listed three categories of departures, that is, those based upon: 1) an encouraged factor; 2) a discouraged factor, or an encouraged factor already considered in the applicable guideline; or 3) one based upon factors not mentioned in the Guidelines. The Fourth Circuit followed that directive in *United States v. Hairston*, 96 F.3d 102 (4th Cir. 1996) (citing *Koon*, 518 U.S. at 95). In *Hairston*, the Fourth Circuit stated that "[i]f the special feature suggested as a basis for a departure is an encouraged factor, the court can depart on that basis if that feature is not already taken into account in the applicable guideline." *Id*. at 105-06.

## ARGUMENT

### A.  Nature and Circumstances of the Offense as Related to Sentencing Factors

Drug trafficking is an extremely serious crime and can produce sad and devastating consequences, destroying lives. As such, drug crimes should be punished decisively. Renteria Renteria understands that he faces a significant term of imprisonment for this offense. Twenty Four months imprisonment plus repatriation to Colombia is not an inconsequential punishment which reflect the seriousness of this crime and satisfy the objectives of sentencing.

7

**B.  History and Characteristics of Defendant as Related to Sentencing Guidelines**

Renteria Renteria is about 28 years old with no criminal history, and no substance abuse issues or mental infirmities. He has a close and supportive family waiting for him. His participation in this crime is an aberration and out of his good, humble character. He understands the lost he has caused his family and under no circumstance he would commit a crime in the future.

A sentence of 24 months is appropriate in this case.

**C.  Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide
Just Punishment, Afford Adequate Deterrence
And Protect the Public**

Section 3553 (a) that Courts should strive to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public and allows for rehabilitation. A 24 months' sentence followed by repatriation is a significant punishment and provides deterrence - both specific deterrence for this defendant and general deterrence for others who would consider engaging in this kind of conduct. This sentence also will surely be sufficient to accomplish the stated goals of the federal sentencing statute.

A sentence of 24 months for this one participant is sufficient to rehabilitate, punish, deter and incapacitate Renteria Renteria for his limited – even if necessary - participation in this crime. for his family.

**D.  Need to Avoid Unwarranted Disparities in Similarly Situated Individuals**

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6). The court should avoid unwarranted similarities in sentencing among defendants who are different

8

in ways not accounted for in the guideline range, *see Gall v. United States,* 552 U.S. 38, 55 (2007) ("need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated"); *United States v. Ovid,* 2010 WL 3940724 (E.D.N.Y. 2010) (sentencing two defendants with similar guideline ranges to 60 months and 126 months respectively based on distinctions in circumstances of the offenses and characteristics of the defendants), and unwarranted differences among defendants whose conduct and characteristics are similar. *See United States v. Pais,* 573 F. Supp. 2d 744, 753, 756-62 (E.D.N.Y. 2008).

Here the Court can determine the varying levels of criminal involvement and responsibility by the other known co-conspirators. Also, this Court can determine the specific social histories and characteristics of the individual defendants. A sentence proportional to their role in the offense and what they had to overcome in life is appropriate and fair.

### E.   Request for Variance Sentence

As stated above, Renteria Renteria requests a variance sentence of 24 months based upon his belief that a combination of factors, which are namely: 1) he was a minimal participant in this offense (PSR ¶¶ 23); 2) Renteria Renteria's participation in this one-time offense was of limited duration. It was a single criminal transaction motivated by the dire need to support his family (PSR ¶ 18, 61-63); 3) Renteria Renteria's conduct herein marked a deviation from an otherwise law-abiding life.   U.S.S.G. §5K2.20 contemplates a departure for Aberrant Behavior as a Policy Statement; and 4) Renteria Renteria social history of displacement, abuse and abject poverty.

### CONCLUSION

For the foregoing reasons and those which will be advanced at sentencing in open court, Renteria Renteria respectfully requests that this Court impose a variance sentence of 24 months, and 2 years of supervised release (including a ban from the United States), and a special

assessment. Given Renteria Renteria's lack of financial resources, he requests that the Court waive any fine and associated costs of prosecution and incarceration. Renteria Renteria's requests that he receives credit for the time he has served in custody for this offense since March 17, 2023.

Respectfully Submitted,

YUNIER RENTERIA RENTERIA
DEFENDANT

By:      _____/s/_____
Fernando Groene
FERNANDO GROENE, P.C.
Counsel for RENTERIA RENTERIA
Virginia State Bar No. 24028
364 Mc Laws Circle, Suite 1A
Williamsburg, Virginia 23185
Telephone: (757) 603.6173
Fax:    (1757) 828.5528
Email: fgroene@groenelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Eric M. Hurt
Assistant United States Attorney
Virginia State Bar No. 35765
UNITED STATES ATTORNEY'S OFFICE
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email: eric.hurt@usdoj.gov

I certify that I have sent a copy of this document to the following non-filing user by e-mail:

Joshua A. Coleman
United States Probation Officer
600 Granby Street Suite 230
Norfolk, Virginia 23510
Tel.: (757) 222-7300
Email: joshua_coleman@vaep.uscourts.gov

_____/s/ _____
Fernando Groene
FERNANDO GROENE, P.C.
Virginia State Bar No. 24028
364 Mc Laws Circle, Suite 1A
Williamsburg, Virginia 23185
Telephone: (757) 603.6173
Fax: (1757) 828.5528
Email: fgroene@groenelaw.com